| 68 | 91 |
| 80 | 322 |

No. 2216.

H. S. HUBBY *v.* C. A. HARRIS ET AL.

1. MORTGAGE—CONDITIONAL SALE.—When, from an inspection of a written contract it is not clear whether it was the purpose of the parties to make a mortgage or a conditional sale, parol evidence may be resorted to in order to determine the question. If, however, apt words are used clearly indicating an intention to make a mortgage, parol evidence will not be admitted to vary the contract.

2. MORTGAGE.—To constitute a mortgage it is essential that there should be a debt existing at the time of the execution of the instrument; though it is not necessary that there should be either a written or verbal promise to pay such debt.

3. SAME.—If one advances money for another to consummate a purchase of land, and takes title to himself with the understanding that it shall be held only as security for repayment, the law would imply an assumpsit, and a written obligation wherein the vendee agrees to convey to the party for whose benefit the purchase was made on payment to him of a like amount of money, with interest, will be regarded as a mortgage.

4. SAME.—If, however, B purchases land and receives title in his own name, which K had the privilege of buying but could not, being unable to pay the purchase money, and in pursuance of an agreement between the parties the purchaser bound himself by written contract to convey the land within a stipulated time to K, on his paying a designated sum, the transaction is not a mortgage, and K was entitled to the land only in the event he pays the money in the time stipulated.

5. CONDITIONAL SALE.—See opinion for an instrument of writing, and for facts connected with its execution, held to evidence a conditional sale.

APPEAL from Waller. Tried below before the Hon. William H. Burkhart.

The instrument which in this case received construction is set forth in the opinion, as are also the facts in evidence on which the construction was based.

*Goldthwaite & Ewing,* for appellant: That the payment of the six hundred dollars to Hunt & Holland by Nooner, at Hubby's instance, created a debt on implied assumpsit, if there was no express promise to pay, Campbell v. Dearborn, 109 Massachusetts, 145; Flagg v. Mann, 2 Swan, 534. That every mortgage implies a loan, and every loan implies a debt, for which an action *in personam* will lie, if there is no express promise to pay in the defeasance, Stephens v. Sherrod, 6 Texas, 294; Brown v. Dewey, 1 Sand. Ch., 71, 72; King v. King, 3 P. Will., 358.

That a debt *in personam* is not essential to a mortgage—there must be a debt, but whether enforceable *in rem* or *in personam*, or both, is a different question, Campbell v. Dearborn, supra, 144; Brown v. Dewey, supra, 73; reviewing all the authorities, and showing that Robinson v. Cropsey, 2 Edwards's Chancery Reports, 138, followed by Texas cases (Ruffier v. Womack, 30 Texas, 340; Calhoun v. Lumpkin, 60 Texas, 185), contains no contrary doctrine.

That on receipt of the six hundred dollars by Hunt & Holland, they became *eo instanti* passive trustees of the naked legal title and Hubby the beneficial owner, Pomeroy's Equity Jurisprudence, volume 2, section 988, et seq. That the deed from Hunt & Holland to Nooner is the same in effect as though executed by Hubby himself, Wait's Actions and Defenses, volume 4, page 519, and authorities collated.

That the deed from Hunt & Holland to Nooner and the defeasance from Nooner are in legal effect one instrument and must be so construed, Moody v. Paschal, 60 Texas, 483. That courts of Equity lean in favor of a mortgage, Stampers v. Johnson, 3 Texas, 5. That the transaction disclosed by the record constitutes a mortgage, and nothing else, Stephens v. Sherrod, 6 Texas, 297; Stampers v. Johnson, 3 Texas, 3; Baxter v. Dear, 24 Texas, 17; Beale v. Ryan, 40 Texas, 409; Boatright v. Peck, 33 Texas, 68; Loving v. Milliken, 59 Texas, 425; Russell v. Southard, 12 Howard, United States, 146; Wait's Actions and Defenses, volume 4, page 530; Campbell v. Dearborn, 109 Massachusetts, 130; Brown v. Dewey, 1 Sand. Ch., 60, and authorities supra.

Appellant also filed a written argument for himself.

*T. S. Reese*, for appellee: On his proposition that the court below did not err in rendering judgment for appellees, because the evidence, taken as a whole, does not show that the transaction whereby Nooner acquired title to the property constituted a mortgage, with equity of redemption in Hubby, he cited Thompson v. Chumney, 8 Texas, 389; Ruffier v. Womack, 30 Texas, 340; Alstin v. Cundiff, 52 Texas, 453; Calhoun v. Lumpkin, 60 Texas, 188; Astugueville v. Loustaunau, 61 Texas, 233; Hardie & Co. v. Campbell, 63 Texas, 293; Conway v. Alexander, 2 Cranch, 57; Hickman v. Cantrel, 9 Yerger, Tennessee, 172; Munnerlin v. Birmingham, 2 Devereux & Battle's Equity, North Carolina, 358; McLaurin v. Wright, 2 Iredell's Equity, 94; Magee v. Catchings, 33 Mississippi, 672; Jones on Mortgages, sections 256, 258, 260, 267, 272, 275; Jones on Chattel Mortgages, sections 25, 27, 33; Moss v. Green, 10 Leigh, Virginia, 251; Scott v. Britton, 2 Yerger, Tennessee, 215.

GAINES, ASSOCIATE JUSTICE. This is the third action brought by appellant for the recovery of the lots in controversy. The first was instituted in 1873, and was dismissed in 1875. Shortly

after its dismissal the second was brought, and resulted in a judgment for the defendant. Upon the theory that it was an action of trespass to try title, within twelve months from the rendition of that judgment the present suit was instituted against appellees—all of whom claim under the defendant in the former actions.

The decision of the case now before us depends upon the construction of the following instrument, executed and delivered to appellant by J. H. Nooner, under whom all of appellees claim:

"COUNTY OF AUSTIN, }
    "State of Texas. }

"I, the undersigned, do herein promise, bargain and agree, when H. S. Hubby shall pay to me the sum of six hundred dollars, and the interest on the same at $25 per month, for two months, or sixty days, that I will deliver up to said H. S. Hubby possession of the block of ten lots in the town of Hempstead, Austin county, known as the Hubby property, which was deeded to me by Hunt & Holland, of Bellville, Austin county, Texas. My receipt for the said money shall be an acknowledgment from me, that the said deed executed to me from the said Hunt & Holland, shall be null and void.

"Witness my hand this thirtieth day of October, 1871.

                                    "J. H. NOONER."

Is this instrument a mortgage or a conditional sale? If the court below was justified in holding it to be the latter, the judgment must be affirmed. Conceding the proneness of debtors to exact of necessitous borrowers hard and inequitable bargains, the courts incline to afford relief to the latter, in this class of cases, and in doubtful instances are disposed to construe such instruments as mortgages only. It is admitted, however, that a conditional sale is neither against the justice nor the policy of the law. If, therefore, it appears from the instrument itself, together with such other legal evidence as may be adduced, that it was the intention of the parties to make a contract of sale, it will be enforced according to its terms. (Conway v. Alexander, 2 Cranch, 57.) Much latitude has been indulged in by the courts in construing these instruments, and it seems impossible, therefore, to deduce from the decisions any rule that will be decisive of every case. This much, however, seems to be settled. If the face of the papers themselves show clearly a mortgage no parol evidence

will be admitted to vary their terms. This rule has also been recognized where the written instruments clearly express the intention of the parties to make a conditional sale, but it may be doubted if it has been universally followed. But if the true intention and meaning of the parties can not be arrived at from the face of the writings themselves, then parol evidence may be resorted to in order to determine the question.

It is settled law, that in order to constitute a mortgage there must be a debt to be secured. Chief Justice Marshall says, in Codway v. Alexander, supra: "It is, therefore, a necessary ingredient in a mortgage that the mortgagee should have a remedy against the person of his debtor." (See also Astugueville v. Loustaunau, 61 Texas, 233; Ruffier v. Womack, 30 Texas, 342; Alstin v. Cundiff, 52 Texas, 460.)

Now it is apparent that the instrument signed by Nooner and delivered to appellant makes no mention of any debt due by the latter to the former. There is nothing in it to justify us in inferring that any such obligation existed. Hence appellant was compelled to resort to extraneous evidence in order to make out his case. This evidence showed that he had originally purchased the property of one Peebles as trustee, and paid only a part of the purchase money; that a suit was instituted against him to enforce a lien for the balance of the money due upon the property, and a judgment rendered against him accordingly; that the lots were sold by virtue of an order of sale under this judgment, and that one Mrs. Peebles became the purchaser and subsequently sold the lots to Hunt & Holland; that he claimed that the sale was invalid, and brought suit to set it aside, and that pending this suit he compromised with Hunt & Holland, agreeing to pay them six hundred dollars within a certain time, in consideration of their contract that if the money was paid within the time they would convey the lots to him. It was also shown that the time being very nearly expired and the money not having been paid, he applied to Nooner and that Nooner paid the money to Hunt & Holland—they making him a deed to the property. This deed, which is evidently the same referred to in the instrument hereinbefore set out, is dated October 31, 1871—it is presumed by mistake—because they appear to have been executed at or about the same time. Appellant testified that he met Nooner on the train and offered to borrow the money from him, but what occurred between them at that time is a blank—it may be because Nooner died before this suit was

brought and his heirs were made parties, and appellant could not have been permitted to testify.

Now, it must be conceded that, in order to sustain this transaction as a mortgage, it was not necessary that appellant should have shown that there was any express promise, either written or oral, that he should repay to Nooner the money paid by the latter to Hunt & Holland. If Nooner advanced the money for him, agreeing to take the title for the benefit of appellant, with the understanding that it was to be held as a security merely for the repayment of the advancement, then the law would imply an assumpsit and the transaction would be a mortgage. But, on the other hand, if it was merely the agreement that Nooner should avail himself of the appellant's privilege of buying the land of Hunt & Holland, and that when this was done appellant should have the right to have the land reconveyed to him upon his paying Nooner within two months the six hundred dollars, and an additional amount of twenty-five dollars per month, then this only entitled appellant to claim the property in the event of his making the payment within the time specified. In this latter case there was no debt and could be no mortgage.

A witness for plaintiff testified that he was present when the transaction took place; that Hubby got Nooner to pay the money to Hunt & Holland, and that Hubby had only a specified time in which to pay back the money; but upon cross examination stated that he had testified, on a former trial of the case, that Hubby was to have only a certain time in which to pay the money, and that, upon his failure to do so within the time, the property was to be Nooner's. On behalf of appellees, the deposition of appellee Harris, taken on the former trial, and before he acquired any interest in the property, was read. His testimony was also to the effect that, at the time the instrument under consideration was executed, the agreement was that appellant was to pay the money named therein within the time named, and that, if he did not, the lots should "become the property of Nooner absolutely." He also testified that the wife of appellant, who was present at the time, remarked that she would rather Nooner should have the property than any one else. This witness did not think the cash value of the lots at the time more than six hundred dollars, but thought they would probably have sold for eight hundred dollars in easy payments. Several other witnesses testified that six hundred dollars was a fair price, and one thought it worth only four hundred or five hundred dol-

lars. But there was other testimony tending to show the property was worth considerably more. It was also shown that Nooner was a poor man, and when the transaction took place he had accumulated about eight hundred dollars and was desirous of buying him a homestead with it, and that he had no money to lend. Three witnesses testified to the effect that, about the time of the negotiations between the parties, appellant applied to them, respectively, to pay Hunt & Holland and take a conveyance of the property, and to allow him until the first of January, 1872, to get it back on payment of the money, with the understanding that, if it was not paid for within the time, the property was to be held absolutely by the grantee.

The cause was submitted to the court below without the intervention of a jury, and there being no finding of the conclusions of fact and law separately, we must affirm the judgment if there be sufficient evidence to support it upon any issue made. There was ample evidence here, we think, to warrant the court in finding that the true intention of the parties to the transaction was that Nooner was to pay Hunt & Holland the six hundred dollars to save a forfeiture of the right of purchase, and that he should extend this privilege to appellant for sixty days, but no longer; that Nooner did not lend appellant the money or advance it for his benefit, except in so far as to continue to him for a limited period the right to buy at a stipulated price. Nooner not being a lender of money, the price paid by Nooner to Hunt & Holland being the value of the property (as the court was authorized to conclude by the testimony), and Hubby's having made application to other parties to advance the money and take the title, with a limited privilege of repurchase reserved to himself, are all cogent circumstances going to establish the correctness of such a finding. There is nothing upon the face of the instrument to be construed, inconsistent with the theory that such was the real intention of the parties to it. The words, "when Hubby shall pay me the sum of six hundred dollars," are not qualified by any reference to any existing debt, or to any transaction in which that sum had been a factor. The word "interest" is used, but clearly in a way that indicated that it is not to be considered interest upon any obligation on the part of appellant. Interest is usually expressed by a certain rate per cent, and not by a sum in gross for a definite period. Besides, is it to be supposed that a party making a loan of money for over four per cent per month for two months (where that rate could be readily

obtained, as the evidence shows was the case here) would not have limited the conventional rate to two months and omitted any agreement as to the rate of interest after that time? The instrument also shows that Nooner took possession under the arrangement, and was to deliver it up to appellant upon payment of the money in two months. Possession is not the usual accompaniment of a mortgage in this State, and the fact that Nooner had possession tends to rebut the idea that any mortgage was intended. (Reading v. Weston, 7 Connecticut, 143; Rich v. Doane, 35 Vermont, 125; Thompson v. Chumney, 8 Texas, 389; Ruffier v. Womack, 30 Texas, 332; Astugueville v. Loustaunau, 61 Texas, 233; Alstin v. Cundiff, 52 Texas, 453.)

The instrument is not technically drawn, nor should it be technically construed. The evidence shows that it was written by appellant himself or by his direction. The judge below was bound to interpret it in the light of the surrounding circumstances as disclosed by the testimony, and we can not say, from an examination of the facts shown by the record, that he erred in holding it a conditional sale and not a mortgage.

No other action of the court being complained of in the assignments of error relied upon in the brief for appellee, the judgment will be affirmed.

*Affirmed.*

Opinion delivered February 15, 1887.